UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

LAURENCE M. SMYTHE,                    )
                                       )
                    Plaintiff,         )
                                       )
          v.                           )      No.   4:05CV1471 FRB
                                       )
JOHN E. POTTER, Postmaster             )
General, United States Postal          )
Service,                               )
                                       )
                    Defendant.         )

**MEMORANDUM AND ORDER**

          Presently pending before the Court is defendant's Motion
for Summary Judgment (filed November 1, 2006/Docket No. 20).  All
matters are pending before the undersigned United States Magistrate
Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

          In his Complaint filed September 12, 2005, plaintiff
Laurence M. Smythe raised claims pursuant to Title VII of the Civil
Rights Act, 42 U.S.C. §§ 2000e-5, et seq., and the Americans with
Disabilities Act (ADA), 42 U.S.C. §§ 12101, et seq., alleging that
his  employer,  the  United  States  Postal  Service,  unlawfully
discriminated against him in his employment on account of his age,
gender,  race,  veteran  status,  and  disability;  and  ultimately
terminated him from his employment in retaliation for engaging in
protected activity.  In a Memorandum and Order entered October 11,
2006 (Docket No. 19), plaintiff's claim under the ADA, as well as
his Title VII claims alleging discrimination on account of his age,

disability and veteran status were dismissed under Fed. R. Civ. P. 12(b) for failure to state a claim. Defendant Postmaster General now moves for summary judgment on plaintiff's remaining Title VII claims of gender and race discrimination and on plaintiff's claim of retaliation, arguing that there are no genuine issues of material fact in dispute and that he is entitled to judgment as a matter of law. Plaintiff has responded to the motion to which defendant has replied.

Pursuant to Rule 56(c), Federal Rules of Civil Procedure, a court may grant summary judgment if the information before the court shows that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The burden of proof is on the moving party to set forth the basis of his motion, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), and the court must view all facts and inferences in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986). Once the moving party shows there are no material issues of fact in dispute, the burden shifts to the adverse party to set forth facts showing there is a genuine issue for trial. Id. The non-moving party may not rest upon his pleadings, but must come forward with affidavits or other admissible evidence to rebut the motion. Celotex, 477 U.S. at 324.

Summary judgment is a harsh remedy and should not be

granted unless the movant "has established his right to judgment with such clarity as to leave no room for controversy[.]" New England Mutual Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). The Eighth Circuit has noted, however, that "summary judgment can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc., 838 F.2d 268, 273 (8th Cir. 1988).

## I. Evidence Before the Court on the Motion

Plaintiff began employment with the United States Postal Service (USPS) in February 1978. Through a series of transfers and promotions, plaintiff was eventually promoted in May 1997 to the position of Postmaster at the post office facility in Warrenton, Missouri. (Deft.'s Exhs. A, B.)

Shortly after assuming his Postmaster position in Warrenton, plaintiff began experiencing difficulties with a subordinate employee and her husband. The difficulties continued for a period of years. (Deft.'s Exh. C.) In January 2000, plaintiff left his position at the Warrenton post office after which, on February 16, 2000, he submitted a claim for workers' compensation claiming that he suffered from work-related stress which was caused or aggravated by his employment. (Deft.'s Exh. D.) On June 16, 2000, plaintiff was notified that his claim for

workers' compensation was denied. (Deft.'s Exh. E.) Upon plaintiff's request, a hearing was held on plaintiff's disapproved claim by the United States Department of Labor, Office of Workers' Compensation Programs (OWCP), on February 8, 2001 (Deft.'s Exh. C), after which, on September 21, 2001, plaintiff was notified that his claim was approved (Exh. F).

In the meanwhile, on October 19, 2000, subsequent to leaving the Warrenton post office, plaintiff completed an EEO Initial Contact Sheet wherein he alleged that he was subjected to discrimination when USPS allowed recalcitrant employees to continue in their behavior, and refused to discipline such employees. Plaintiff stated that he was "unable to cite [the] basis" for the alleged discrimination at that time. (Deft.'s Exh. U.) In a subsequent form entitled "Information for Precomplaint Counseling," plaintiff reported to the EEO that he was discriminated against on account of his age, gender, emotional disability, and veteran status, and that the incident which prompted him to seek out EEO counseling occurred on January 14, 2000, when he was "relieved of career position[.]" (Deft.'s Exh. V.) An EEO Complaint was thereafter filed on December 1, 2000, incorporating plaintiff's claims as made in his Information for Precomplaint Counseling form. (Deft.'s Exh. W.) Plaintiff's EEO Complaint was dismissed on February 8, 2001 (Deft.'s Exh. X), after which plaintiff appealed the decision to the Equal Employment Opportunity Commission (EEOC).

On May 31, 2001, the EEOC affirmed the agency's dismissal of plaintiff's EEO Complaint. (Deft.'s Exh. Y.) Plaintiff received notice of this decision on June 5, 2001. (Deft.'s Exh. Z.)

On July 26, 2001, plaintiff, with the assistance of retained counsel, brought a Title VII action in this Court in which he alleged that USPS discriminated against him in his employment on account of his age, gender, emotional disability, race, and veteran status in that USPS failed to take corrective and preventative action with respect to the harassment directed toward plaintiff during his employment and ultimately terminated plaintiff's employment. Plaintiff alleged that such unlawful acts occurred between May 1, 1997, and June 11, 2001. (Deft.'s Exh. Z.) See Smythe v. Potter, Cause No. 4:01CV1184 FRB (E.D. Mo. Jul. 26, 2001) (complaint). After substantial delay, service of process was effectuated upon the defendant, and defendant answered plaintiff's Complaint on September 6, 2002. Id. (E.D. Mo. Sept. 6, 2002) (answer).

During the pendency of plaintiff's previous civil cause of action, and specifically on March 11, 2002, Kathleen M. Spirk, a USPS employee and Manager of Injury Compensation Specialist for the Gateway District, received information that plaintiff may be engaging in outside employment which might be inconsistent with his reported condition that provided the basis for his approved workers' compensation claim. (Deft.'s Exh. DD.) On that same

- 5 -

date, Ms. Spirk contacted Lisa Mitcham, Injury Compensation Specialist for the Great Lakes Area (of which the Gateway District is a part), and advised her of such information. (Id.; Deft.'s Exh. EE.) On March 15, 2002, Ms. Mitcham contacted the Postal Inspection Service and requested that an investigation be conducted into the claim, after which an investigation ensued. (Deft.'s Exhs. EE, FF, G.) In a letter from the Department of Labor dated February 25, 2003, plaintiff was informed that his workers' compensation benefits had been terminated. (Deft.'s Exh. I.)[1] With the filing of its Report on March 19, 2003, the Postal Inspection Service ended its investigation. (Deft.'s Exh. G.)

Meanwhile, in plaintiff's civil cause of action, plaintiff moved that the matter be dismissed in its entirety without prejudice. Smythe, Cause No. 4:01CV1184 FRB (E.D. Mo. Mar. 4, 2003) (motion). In a separate Order entered March 31, 2003, the Court granted plaintiff's motion and the cause was dismissed without prejudice. Id. (E.D. Mo. Mar. 31, 2003) (order).

In May 2003, USPS requested of plaintiff's health care providers that they provide updated information with respect to the status of plaintiff's health condition. (Deft.'s Exhs. J, K.) In a lengthy report dated June 14, 2003, plaintiff's treating psychiatrist, Dr. Thomas K. Mangelsdorf, provided the USPS his

---

[1]On August 15, 2005, the Department of Labor notified plaintiff that it had reversed this adverse decision of February 25, 2003. (Deft.'s Exh. T.)

opinion that plaintiff "has a major psychiatric illness which came
on because of and in association with his employment with the
United States Postal Service and that in that respect he is totally
and permanently disabled" (Deft.'s Exh. M at p. 2; Pltf.'s Exh. 2,
pt. 1 at p. 16), concluding that "overall Mr. Smythe, in my
opinion, is totally and permanently disabled from working with the
U.S. Postal Service." (Pltf.'s Exh. 2, pt. 1 at p. 19.) Likewise,
plaintiff's treating psychologist, Amy Frankel, provided the USPS
her opinion that plaintiff was "totally and permanently disabled
and will not be able to return to work in the future." (Deft.'s
Exh. L.) Upon receiving this information, the USPS invited
plaintiff to meet and discuss his health care providers' opinions
and to provide information regarding his ability to return to work
with the USPS. (Deft.'s Exh. N.) This meeting occurred on August
20, 2003, at which neither plaintiff nor his attorney presented any
documentation demonstrating that plaintiff could return to work
with the USPS, nor any contention that Drs. Mangelsdorf and Frankel
were mistaken in their opinions. (Deft.'s Exh. O.)

Based on the information submitted by plaintiff's
treating health care providers and the meeting of August 20, 2003,
at which plaintiff failed to provide any contrary evidence, USPS
determined in October 2003 to propose that plaintiff be separated
from the USPS and thereby become eligible for the receipt of
disability retirement benefits. (Deft.'s Exh. O.) In a Letter of

Decision dated December 24, 2003, William P. Mossman, Human Resources Manager for USPS, informed plaintiff of his final decision that plaintiff be separated from the USPS effective January 10, 2004, "in order to promote the efficiency of the Postal Service." (Deft.'s Exh. P.)

> Based upon the facts and medical documentation presented, it is unlikely that you will ever be able to perform the duties of your position and there is no expectation that you will be able to return to duty in a reasonable time. It follows that if an employee reaches a point where he or she cannot work, even for a very valid reason, then that employee's overall value to Management will be reduced or eliminated.
>
> . . . I find your inability to perform the duties of your position serious and impede the efficiency of the Postal Service. Therefore, it is my decision that you will be separated from the Postal Service due to your inability to perform the duties of your position.

(Id.)[2]

---

[2]Prior to this Letter of Decision and subsequent to the Notice of Proposed Separation, Dr. Frankel advised the USPS in a Treatment Update dated November 25, 2003, that, in her opinion,

> Mr. Smythe remains totally and permanently disabled. Based on a reasonable degree of medical certainty, I find that the above symptoms were most likely caused and certainly exacerbated by the actions of the USPS and OWCP. Though it is hoped that therapy will help reduce his acute symptomology, I do not believe he will fully return to his previous level of functioning, and do not anticipate his being able to work again in the future.

(Deft.'s Exh. L.)

On January 22, 2004, plaintiff applied for disability retirement, which was approved. (Deft.'s Exhs. R, S.)

On March 4, 2004, plaintiff completed an EEO form entitled "Information for Pre-Complaint Counseling" in which plaintiff alleged that he was unlawfully terminated from his employment with the USPS on January 10, 2004, due to his disability and age, and in retaliation for engaging in protected activity in October 2000 and June 2001.[3] Plaintiff further alleged that the USPS subjected him to continued harassment and intimidation up to his termination, with such conduct including the Postal Inspection Service's investigation of his workers' compensation case and the termination of his workers' compensation benefits. (Deft.'s Exh. BB.) On June 13, 2005, the agency found no discrimination based on plaintiff's "race, age, disability, or as retaliation for prior EEO activity[,]" and closed plaintiff's case. (Pltf.'s Compl., Attchmnt.) Plaintiff, with the assistance of counsel, filed the instant cause of action in this Court on September 12, 2005.

In his Complaint filed in this cause, plaintiff reasserts all claims made in his Complaint filed in Cause No. 4:01CV1184 FRB. In addition, plaintiff makes additional allegations regarding the harassing conduct and insubordination of the postal employee and her husband and USPS's failure to adequately respond thereto, with

_____

[3]On this form, it is noted that on February 13, 2004, plaintiff requested an appointment with a Dispute Resolution Specialist. (Deft.'s Exh. BB.)

such incidents occurring between January 1998 and March 2001. Plaintiff also alleges in his Complaint that beginning in April 2000 and continuing through October 2001, USPS interfered with plaintiff's application for workers' compensation and began to engage in harassing conduct in March 2002 by investigating plaintiff's workers' compensation claim, resulting in plaintiff being denied medical care in September 2002 for employment-related conditions. Finally, plaintiff claims that on December 24, 2003, USPS unlawfully terminated him from his employment for his alleged inability to perform the duties of his position.

## II. Discussion

As noted <u>supra</u> at pp. 1-2, plaintiff's claim under the ADA, as well as his Title VII claims alleging discrimination on account of his age, disability and veteran status were previously dismissed under Fed. R. Civ. P. 12(b) for failure to state a claim. As such, remaining before the Court are plaintiff's Title VII claims of gender and race discrimination, as well as his claim that the USPS unlawfully retaliated against him for engaging in protected conduct. In the instant Motion for Summary Judgment, USPS argues that it is entitled to judgment as a matter of law on such claims inasmuch as 1) various of plaintiff's claims are time-barred; 2) plaintiff failed to exhaust administrative remedies; 3) plaintiff's claim regarding the Postal Service's investigation is not actionable; 4) plaintiff has failed to make a *prima facie* case

that his separation from the USPS was on account of discrimination;
and 5) legitimate, non-discriminatory reasons exist for defendant's
separation decision and plaintiff cannot rebut such reasons.  The
Court will address defendant's contentions in turn.

A.    Timeliness of Claims

        Defendant argues that to the extent plaintiff attempts to
resurrect the claims raised in Smythe v. Potter, Cause No.
4:01CV1184 FRB (E.D. Mo. 2001), such claims are time-barred and
cannot be pursued in this action.  For the following reasons,
defendant's argument is well taken.

        Under 29 C.F.R. §§ 1614.103 and 1614.106, complaints of
discrimination for acts prohibited by Title VII may be brought
against federal agencies, including the USPS, and must be filed
with the agency that allegedly discriminated against the
complainant.  Where the complainant appeals the agency's adverse
decision to the EEOC and the EEOC renders a final decision, the
complainant has ninety days from his receipt of the final decision
within which to file a civil action in the United States District
Court.  29 C.F.R. § 1614.407(c).

        With respect to plaintiff's first EEO Complaint initially
pursued in October 2000 and appealed to the EEOC, plaintiff
received a final decision from the EEOC on June 5, 2001.
Therefore, any civil action on claims of discrimination raised
therein were to be filed in federal court not later than September

4, 2001.[4]  As such, plaintiff's first cause of action filed in July 2001 was timely under § 1614.407(c).  However, plaintiff dismissed this civil action without prejudice in March 2003.  "Once a dismissal without prejudice is entered and the pending suit is dismissed, it is as if no suit had ever been filed." Garfield v. J.C. Nichols Real Estate, 57 F.3d 662, 666 (8th Cir. 1995).  As such, plaintiff continued to be bound by the dictates of § 1614.407(c), that is, that his civil action be filed within ninety days of his receipt of the EEOC's final decision.  Plaintiff refiled his claims in the instant cause of action on September 12, 2005, well beyond the ninety-day period within which plaintiff could bring a civil action on his claims raised in the 2000 EEO Complaint.  Plaintiff presents the Court with no argument or evidence demonstrating that either waiver, estoppel or equitable tolling applies so as to render the claims timely.  Nor is the ninety-day statute of limitations tolled by the filing and pendency of the case previously dismissed without prejudice.  Garfield, 57 F.3d at 666.  Accordingly, to the extent plaintiff attempts to resurrect his claims brought in his 2000 EEO Complaint and in Smythe v. Potter, Cause No. 4:01CV1184 FRB (E.D. Mo. 2001), by reasserting them in this cause of action, such claims are untimely and defendant is entitled to summary judgment thereon.  Garfield,

_____

[4]Although the ninetieth day actually fell on September 3, 2001, such date was Labor Day, a recognized legal holiday.  Any party which has a filing due on such a date is permitted to make such filing through the end of the next day.  Fed. R. Civ. P. 6(a).

57 F.3d at 666; <u>Dunham v. City of O'Fallon, Mo.</u>, 945 F. Supp. 1256 (E.D. Mo. 1996).

B.    <u>Exhaustion of Administrative Remedies</u>

Defendant contends that plaintiff failed to allege in his 2004 EEO Complaint that any discrimination was on account of his race and/or gender and that, therefore, plaintiff is barred from pursuing such claims here given his failure to exhaust administrative remedies.  Defendant also argues that plaintiff failed to exhaust his administrative remedies with respect to his complaints regarding the Postal Inspection Service's investigation inasmuch as plaintiff failed to timely bring an EEO claim thereon.

A postal employee must exhaust applicable administrative remedies before commencing a Title VII action in federal court. <u>Patrick v. Henderson</u>, 255 F.3d 914, 915 (8th Cir. 2001). "Exhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts." <u>Williams v. Little Rock Mun. Water Works</u>, 21 F.3d 218, 222 (8th Cir. 1994).  To exhaust administrative remedies, a plaintiff must, <u>inter alia</u>, timely file a charge of discrimination with the administrative agency setting forth the facts and nature of the charge. <u>Id.</u>  "A plaintiff will be deemed to have exhausted administrative remedies as to allegations

contained in a judicial complaint that are like or reasonably related to the substance of charges timely brought before the EEOC." Id. "Allegations outside the scope of the EEOC charge[, however,] circumscribe the EEOC's investigatory and conciliatory role and for that reason are not allowed." Duncan v. Delta Consol. Indus., Inc., 371 F.3d 1020, 1025 (8th Cir. 2004).

In this cause, plaintiff did not raise any claim of discrimination based on gender or race in his 2004 EEO Pre-Complaint form. (Deft.'s Exh. BB.) It appears, however, that plaintiff's claim of race discrimination was presented to the agency's EEO division in some manner inasmuch as a final agency decision was rendered thereon. (Pltf.'s Compl., Attchmt.)[5] Nevertheless, the undisputed evidence before the Court shows plaintiff's current claim of *gender* discrimination to have never been presented to or investigated by any administrative agency. Plaintiff presents no argument or evidence to this Court demonstrating that his current claim of gender discrimination is like or reasonably related to any claim raised in his 2004 EEO Complaint or considered by the agency such that the claim should be considered exhausted. Nor has plaintiff presented the Court with any argument or evidence demonstrating that either waiver, estoppel or equitable tolling applies so as to excuse his failure to

---

[5]Plaintiff's claim of race discrimination is addressed infra at Section II.C.

administratively exhaust the claim.  Accordingly, because plaintiff did not exhaust his current claim of gender discrimination through the administrative process, defendant is entitled to summary judgment thereon.  <u>Duncan</u>, 371 F.3d at 1026; <u>Williams</u>, 21 F.3d at 223.

With respect to plaintiff's claim regarding the Postal Inspection Service's investigation into his workers' compensation case, a review of plaintiff's 2004 EEO Pre-Complaint form shows plaintiff to have complained that such investigation constituted harassment and intimidation and was performed for the purpose of terminating plaintiff's workers' compensation benefits.  For the following reasons, however, plaintiff has failed to exhaust such claims inasmuch as they were untimely filed with the administrative agency.  As such, plaintiff cannot pursue such claims here.

To properly exhaust, a complainant must initiate the EEO Pre-Complaint process "within 45 days of the date of the matter alleged to be discriminatory[.]"  29 C.F.R. § 1614.105(a)(1).  <u>See Patrick</u>, 255 F.3d at 915; <u>Bailey v. United States Postal Serv.</u>, 208 F.3d 652, 654 (8th Cir. 2000).  The failure to timely initiate the process constitutes a failure to exhaust administrative remedies which, absent waiver, estoppel or equitable tolling, bars further action on the claim.  <u>Bailey</u>, 208 F.3d at 655.  To the extent plaintiff claims here that the Postal Inspection Service engaged in harassing and intimidating conduct by its investigation of

plaintiff's workers' compensation claim, the undisputed evidence before the Court shows the Postal Inspection Service to have concluded its investigation not later than March 19, 2003, and that no subsequent action was taken with respect to the investigation. Plaintiff did not initiate the EEO process on any claims related to the investigation until, at the earliest, February 13, 2004. Because well over forty-five days had passed since the Postal Inspection Service's conclusion of its investigation, and plaintiff has failed to present any evidence or argument excusing such untimeliness, plaintiff failed to exhaust administrative remedies on his claim concerning such investigation and defendant is entitled to summary judgment thereon. <u>Bailey</u>, 208 F.3d at 655.

C.    <u>Race Discrimination</u>

Plaintiff claims that he was terminated from his employment on January 10, 2004, on account of his race. A review of the record shows plaintiff to have satisfactorily exhausted such claim inasmuch as it was presented to the administrative agency and the agency rendered a final decision thereon.

Title VII of the Civil Rights Act prohibits an employer from discriminating against any individual in the terms and conditions of his employment on the basis of that individual's race. 42 U.S.C. § 2000e-2(a). To survive a defendant's motion for summary judgment on a claim of race discrimination, a plaintiff may rely on direct evidence of discrimination showing a specific link

between the alleged discriminatory animus and the challenged decision, or, if such evidence is lacking, he may present evidence creating the requisite inference of unlawful discrimination through the analysis prescribed by <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>Griffith v. City of Des Moines</u>, 387 F.3d 733, 736 (8th Cir. 2004). Inasmuch as the record fails to show any direct evidence of discrimination, the Court must determine whether sufficient evidence exists to create an inference of unlawful discrimination in defendant's employment decision.

Plaintiff must first establish a *prima facie* case of race discrimination. <u>McDonnell Douglas</u>, 411 U.S. at 802. To establish a *prima facie* case in the instant cause, plaintiff must demonstrate that: 1) he is a member of a protected class; 2) he was meeting his employer's legitimate job expectations; 3) he suffered an adverse employment action; and 4) similarly situated employees outside the protected class were treated differently. <u>Shanklin v. Fitzgerald</u>, 397 F.3d 596, 602 (8th Cir. 2005); <u>Jacob-Mua v. Veneman</u>, 289 F.3d 517, 521 (8th Cir. 2002). If plaintiff can establish a *prima facie* case, the burden shifts to the employer-defendant to produce evidence that its adverse employment action against plaintiff was for a legitimate, non-discriminatory reason. <u>McDonnell Douglas</u>, 411 U.S. at 802; <u>Shanklin</u>, 397 F.3d at 602. If the employer-defendant satisfies this burden of production, the burden shifts back to the plaintiff to demonstrate that the reason

- 17 -

provided by the defendant is pretext for discrimination. <u>Shanklin</u>, 397 F.3d at 602. At all times, plaintiff bears the ultimate burden of proving that he was unlawfully discriminated against on account of his race. <u>Davis v. KARK-TV, Inc.</u>, 421 F.3d 699, 704 (8th Cir. 2005); <u>Rose-Maston v. NME Hosp., Inc.</u>, 133 F.3d 1104, 1107-08 (8th Cir. 1998).

Defendant USPS argues that plaintiff cannot meet his initial burden of establishing a *prima facie* case of race discrimination inasmuch as plaintiff has failed to show that he was treated differently from similarly situated employees outside the protected class. For the following reasons, defendant's argument is well taken.

At the *prima facie* stage of evaluating a motion for summary judgment, the standard to be applied in determining whether employees are similarly situated is low. <u>Rodgers v. U.S. Bank, N.A.</u>, 417 F.3d 845, 852 (8th Cir. 2005). To meet this low threshold, however, plaintiff must nonetheless present evidence that he and members not within his protected class were involved in the same or similar conduct and were dealt with in different ways. <u>Id.</u> In the instant cause, the undisputed evidence shows that, after having received information from plaintiff's health care providers that plaintiff's health condition prevented him from working for USPS and that plaintiff would be unable to work for USPS at any time in the future, USPS determined to separate

plaintiff from his employment inasmuch as he was unable to perform his job duties. Plaintiff has presented no evidence to the Court demonstrating that any other Postmaster or postal service employee not within his racial class[6] remained employed with the USPS despite being prevented from engaging in such work on account of their health condition.

Given plaintiff's failure to provide any evidence that similarly situated employees who were not in the same protected class were treated differently by the USPS, plaintiff has failed to make a *prima facie* case of race discrimination and summary judgment is appropriately granted to defendant. Gilmore v. AT & T, 319 F.3d 1042, 1046 (8th Cir. 2003).

D.    Retaliation

Plaintiff claims that his termination was in retaliation for engaging in protected activity, that is, pursuing agency action regarding the harassment to which plaintiff was allegedly subjected by plaintiff's subordinate employee and her husband.[7]

---

[6]Evidence before the Court shows plaintiff to be Caucasian.

[7]In its Memorandum in Support of Summary Judgment, defendant contends that plaintiff abandoned his EEO claim of retaliation inasmuch as he failed to raise the claim in the instant cause of action. (Deft.'s Memo. in Supp. at p.2, n.1.) In paragraph 9(rr) of plaintiff's Complaint, however, plaintiff claims that defendant terminated him when he told its agents of the harassing conduct to which he had been subjected. The undersigned finds this to be a sufficient claim of retaliation. In any event, defendant addresses plaintiff's claim of retaliation in its substantive argument relating to summary judgment. (Deft.'s Memo. in Supp. at pp.13-15.)

Title VII prohibits employers from retaliating against employees for opposing any discrimination made unlawful by Title VII, or for making a charge or participating in any manner in an investigation or proceeding under Title VII. 42 U.S.C. § 2000e-3(a); Bogren v. Minnesota, 236 F.3d 399, 407-08 (8th Cir. 2000); Brower v. Runyon, 178 F.3d 1002, 1005 (8th Cir. 1999). To establish a *prima facie* case that he was retaliated against for complaining of discriminatory conduct, plaintiff must show that: 1) he engaged in activity protected by Title VII; 2) the defendant-employer took adverse employment action against him; and 3) a causal connection exists between his protected activity and the adverse employment action. Wallace v. Sparks Health Sys., 415 F.3d 853, 858 (8th Cir. 2005); Scott v. County of Ramsey, 180 F.3d 913, 917 (8th Cir. 1999). If plaintiff establishes his *prima facie* case of retaliation, the burden shifts to the defendant-employer to produce some legitimate, non-discriminatory reason for the adverse action. Buettner v. Arch Coal Sales Co., Inc., 216 F.3d 707, 714 (8th Cir. 2000). If the employer satisfies this burden, the plaintiff then must demonstrate that the proffered reason is a pretext for retaliation. Id. The ultimate burden rests with the plaintiff to establish that his employer's adverse action was in retaliation for plaintiff's protected conduct. Id.

In its Motion for Summary Judgment, defendant does not argue that plaintiff fails to make a *prima facie* case of

retaliation. Instead, defendant argues only that it has presented a legitimate, non-retaliatory reason for its action, and that plaintiff cannot demonstrate that such reason is pretext for any unlawful purpose. Assuming *arguendo* that plaintiff can establish a *prima facie* case of retaliation, defendant's argument that plaintiff cannot demonstrate pretext is well taken.

Defendant contends that it determined to separate plaintiff from employment due to the fact that his mental health care providers provided reports to the USPS that plaintiff could never return to work for the USPS. This explanation is a legitimate, non-retaliatory reason for adverse employment action. Palesch v. Missouri Comm'n on Human Rights, 233 F.3d 560, 569 (8th Cir. 2000) (physician's statement that plaintiff unable to perform the functions of her job). See also, e.g., Bass v. SBC Communications, Inc., 418 F.3d 870, 873 (8th Cir. 2005) (ADA) (physician's statement that employee was unable to return to work); Equal Employment Opportunity Comm'n v. Exel, Inc., 208 F. Supp. 2d 1013, 1024 (E.D. Mo. 2002) (ADA) (medical opinions and placement of permanent restrictions on work activities).

Defendant having proffered a legitimate, non-retaliatory reason for the adverse employment action, the burden shifts back to the plaintiff to present evidence that defendant's reason was pretext for retaliation. Wallace, 415 F.3d at 860. "To carry this burden, the employee must show that the employer's proffered reason

was unworthy of credence." Id. (internal quotation marks and citations omitted). This plaintiff has failed to do. The undisputed evidence before the Court shows that plaintiff's treating health care providers informed the USPS that plaintiff could not, and would never be able to, work for the USPS. Plaintiff presents no evidence that discredits these opinions nor defendant's reason to rely on them in its determination to separate plaintiff from employment on account of his inability to perform the work. Indeed, in his affidavit submitted in response to the instant motion, plaintiff acknowledges his treatment and diagnoses from his treating physicians but appears to chastise the USPS for seeking out such opinions, asserting that this conduct was part of an overall plan to terminate plaintiff from his employment. (Pltf.'s Affid. at paras. EE, KK, MM-PP.) Other than these mere assertions, plaintiff fails to present any evidence to the Court that discredits the reason put forth by defendant for its adverse employment action, or that demonstrates that USPS's determination to separate plaintiff from employment in January 2004 was in any way related to plaintiff's protected activity in 2000 and 2001. See Buettner, 216 F.3d at 717 (plaintiff presented no evidence to discredit factual allegation proffered by defendant to support its reason for adverse action); Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994) (to withstand summary judgment, plaintiff must substantiate allegations with "'sufficient probative

evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy.'") (quoting <u>Gregory v. Rogers</u>, 974 F.2d 1006, 1010 (8th Cir. 1992)).

Inasmuch as plaintiff has offered no evidence that would support a reasonable inference that defendant's reason for separating him from employment was pretext for retaliation, defendant is entitled to summary judgment.

Accordingly, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant's Motion for Summary Judgment (Docket No. 20) is **GRANTED** in its entirety.

Judgment shall be entered accordingly.

_Frederick R. Buckles_
UNITED STATES MAGISTRATE JUDGE

Dated this  _25th_  day of April, 2007.